**United States District Court**
**for the District of New Jersey**

| | |
|---|---|
| SPINE SURGERY ASSOCIATES & DISCOVERY IMAGING, PC on assignment of ANTHONY P., <br><br>                   Plaintiff, <br><br>    v. <br><br> INDECS CORP. and CONSTANT SERVICES INC., <br><br>              Defendants. | Civil No.: 13-1390 (KSH) (CLW) <br><br><br> **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

A medical practice that performed two spinal surgical procedures has sued the sponsor of its patient's benefit plan and the plan's claims administrator for unreimbursed charges that amount to over $80,000.  At issue in the motion before the Court is whether the provider, as opposed to the subscriber, has the right to bring claims under the Employee Retirement Income Security Act ("ERISA," 29 U.S.C. § 1001 *et seq.*).

In its four-count amended complaint [D.E. 19], plaintiff Spine Surgery Associates & Discovery Imaging ("Spine Surgery") brought ERISA claims, as well as a common-law breach of contract claim, against defendants INDECS Corp. ("INDECS") and Constant Services, Inc. ("Constant").  INDECS now moves to dismiss [D.E. 20] pursuant to Fed. R. Civ. P. 12(b)(6), arguing that as plan administrator it is not a proper defendant and that Spine Surgery is not a proper plaintiff.  For the following reasons, the motion will be granted in part and denied in part.

# I. Background

The facts are taken from the amended complaint and the attached exhibits.  In ruling on a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor, granting dismissal only if the pleading does not suggest a plausible entitlement to relief.  *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (per curiam).

Spine Surgery is a healthcare provider in Somerset and, on two occasions in 2012, provided medical and surgical care to non-party Anthony P.  (Am. Compl. ¶ 1.)  At the time of these procedures, Anthony P. was enrolled in an Employee Benefit Plan that was sponsored by Constant.  The total cost of Anthony P's procedures was $119,314 and Spine Surgery submitted bills to INDECS, as claims administrator, for that amount.  After receiving payment for only $37,977.93 of the amount billed, Spine Surgery commenced this action.

A) The Employee Benefit Plan

Constant's Employee Benefit Plan (the "Plan"), adopted in October 2011, is an ERISA welfare plan (as defined by 29 U.S.C. § 1002(1)) providing Anthony P. with health care benefits. (Am. Compl. ¶ 2.)  The "Plan Document and Summary Plan Description" is attached to the amended complaint as Exhibit A.  Constant is the Plan's administrator, with responsibilities that include interpreting the Plan with "maximum legal discretionary authority," keeping and maintaining documents associated with the Plan, and appointing a separate claims administrator to pay claims.  (Plan Document 50.)  That claims administrator is INDECS, the moving defendant.  (Plan Document 59.)

The Plan follows what is often called the preferred provider organization (PPO) model. Under it, certain medical providers, such as hospitals and physicians who are termed "Network Providers," have agreed to charge reduced fees to members of the Plan, thereby enabling the Plan to reimburse higher percentages of costs charged by those providers.  (Plan Document 10–12.)  The Plan requires precertification for certain treatment options and surgical procedures. (Plan Document 20–21.)

In order to pursue a claim for benefits, a covered person—that is, an employee or dependent (Plan Document 23)—must submit a completed claim form to INDECS with bills attached for services rendered.  Claims must generally be filed within 45 days after charges are incurred.  If INDECS denies the claim, it provides the covered person with written notice.  A covered person wishing to challenge a whole or partial denial can appeal by directing a request for review to either INDECS or Constant as the Plan Administrator.  (Plan Document 34–35.)

Plan materials also explain the ERISA rights that participants and covered persons have under the Plan.  Among other things, the discussion of rights covers the ability to sue in certain contexts to enforce Plan rights and fiduciary obligations.  (*See* Plan Document 51–52.)

The relationship between INDECS and Constant is set out in a separate Administrative Services Agreement (the "Agreement"), attached to the amended complaint as Exhibit B.  The Agreement originally was executed by INDECS's predecessor; INDECS was assigned responsibility on January 1, 2011.  In part, the Agreement builds on the statement in the Plan that INDECS is not a Plan fiduciary. (Plan Document 51.)  Rather, as claims administrator, INDECS acts as Constant's agent, and is specifically required to consult with Constant about any "claim matters that are beyond the ordinary."  (Agreement 1–3.)  INDECS's main role is to "adjudicate claims on behalf of and under the direction and authority of" Constant, and to "perform such

other services as may be required in connection with claims administration." (Agreement 4.) An appendix defines a variety of basic services under the Agreement.

## B) Surgery and Benefits Assignment

Anthony P. is a covered person under the Plan. (Am. Compl. ¶¶ 2, 6.) Twice in 2012, in January and in May, he received care from Spine Surgery. (Am. Compl. ¶ 1.) (The exact procedures are set forth in the medical records attached to the complaint as Exhibit C.)

Shortly before undergoing the first procedure, Anthony P. executed what the amended complaint calls an "assignment of benefits" (Am. Compl. ¶ 8), which is attached as Exhibit D. The document is titled "Patient Registration: Office Policy/Assignment of Insurance Benefits – Authorization to Release Information" (the "Assignment") and provides in relevant part:

> In consideration of services rendered or to be rendered to the above named patient, I hereby authorize payment directly to Spine Surgery Associates & Discovery Imaging, PC. or other provider of health services of any and all insurance benefits to which I may otherwise be entitled for services rendered by the provider, but not to exceed the provider's standard charges for such services.

> In the event the provider's charges are outstanding, I hereby authorize the provider to file such claim with my insurance company on my behalf so that the provider may realize payment of its charges. I understand that Spine Surgery . . . is not a participating provider with my insurance company and that I am responsible for paying all applicable co-payments, co-insurance, deductibles and amounts determined above the allowed as determined by my insurance policy, State laws and regulations. I also agree that if the provider does not receive full payment from my insurance company on a timely basis, I am personally responsible for full payment of the provider's standard charges. . . . I authorize the release of any medical and other information necessary to process insurance claims.

(Assignment.)

## C) Spine Surgery Submits Claim for Benefits

Spine Surgery submitted bills to INDECS for charges of $119,314 representing the total cost of Anthony P.'s procedures. (Am. Compl. ¶ 9.)

In September 2012, INDECS sent Spine Surgery three[1] summaries of benefits and three

checks—two for May and one for January—which are attached to the amended complaint as

Exhibit F.  According to the summaries, the majority of the charges were not covered by the Plan

and INDECS paid Spine Surgery $37,977.93 of the amount billed, leaving $81,336.07 of the

charges unreimbursed. (Am. Compl. ¶ 10.)

Each summary also contained the following notice:

> If your claim is not paid in full, you or your authorized representative may appeal
> the claim within 60 to 180 days (check your plan) following the receipt of
> determination.  The appeal must be made in writing and include any written
> comments, documents, records, or other information relating to the claim that you
> would like to be taken into consideration.  The appeal should be directed to:
> INDECS [address].  If your appeal is denied, in whole or in part, or this plan
> should fail to follow established appeal procedures, you will be deemed to have
> exhausted the administrative remedies available under the Plan and you will be
> entitled to bring a civil action under ERISA.

D) Procedural History

Spine Surgery originally named INDECS and Constant as one aggregate defendant in a

state court complaint filed in Bergen County Superior Court.  INDECS filed a notice of removal

[D.E. 1] asserting federal question jurisdiction and, a few days later, moved to dismiss the

complaint [D.E. 3].  Spine Surgery filed a cross motion to amend based, in part, on receiving the

Plan documents for the first time via INDECS's motion to dismiss [D.E. 8].  In an opinion and

order [D.E. 17–18], this Court granted Spine Surgery's request to amend and denied INDECS's

motion as premature.

Spine Surgery filed its four-count amended complaint in January 2014 naming Constant

and INDECS as defendants in all counts.  Count 1 alleges common-law breach of contract.

---

[1] The record contains a fourth, but it appears to be a duplicate of one of the two May bills, with remark codes
showing that it was denied as such.  A handwritten note on the version of this document submitted with the original
complaint [D.E. 1-1] suggests that the "duplicate" was the result of an attempt to correct a billing code on the one
originally submitted, which had not "been processed to date."

Count 2 is an ERISA claim for benefits pursuant to 29 U.S.C. § 1132(a), which Spine Surgery asserts standing to pursue "based on the assignment of benefits obtained . . . from Anthony P." (Am. Compl. ¶ 21.)  Count 3 is a claim for statutory ERISA penalties based on an alleged failure to promptly provide Spine Surgery with copies of the Plan documentation.  Count 4 alleges a failure to maintain claims procedures that comply with the regulations governing ERISA (29 C.F.R. § 2560.503-1).  In count 4, Spine Surgery seeks, in addition to money damages, an order declaring the defendants noncompliant with ERISA regulations, so that Spine Surgery may be deemed to have exhausted its ERISA administrative remedies.

INDECS again moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  [D.E. 20.]  Spine Surgery opposes and INDECS has replied.  [D.E. 25–26.]  Constant did not join the motion.

## II. Discussion

### A) Breach of Contract

When first moving to amend its complaint, Spine Surgery proposed dropping the breach of contract claim.  (*See* Dec. 30, 2013 Op. 4.)  It now concedes that the continued inclusion of the breach of contract claim in the amended complaint "was an inadvertent error," and agrees to dismissal of Count 1.  (Spine Surgery Opp'n Br. 4.)

### B) Spine Surgery as a Proper Plaintiff

1) *Parties Authorized to Bring Suit Under ERISA*

ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), permits lawsuits to be brought by a limited, enumerated list of parties, depending on the kind of claim asserted.  Claims for ERISA benefits are restricted to "participants" and "beneficiaries."  *See* 29 U.S.C. § 1132(a)(1).  Spine Surgery does not purport to be a participant or beneficiary as those terms are

defined in ERISA.  *See* 29 U.S.C. § 1002(7)–(8).  Rather, Spine Surgery claims it is entitled to

bring its count 2 benefits claim as Anthony P.'s assignee.  (*See* Am. Compl. ¶ 21.)

      2) *ERISA Participants/Beneficiaries Can Assign Medical Benefits to Providers*

      INDECS argues first that—even assuming a valid assignment—standing to sue for

ERISA benefits does not extend to assignees of either plan participants or beneficiaries.

INDECS contends that, under Circuit law, § 1132(a) must be read "narrowly," and points to

decisions from district courts in this Circuit that have disallowed assignees' claims for benefits—

although it acknowledges some holdings to the contrary.  (*See* INDECS Moving Br. 14–15

(citing, *inter alia*, *Ne. Dep't ILGWU Health & Welfare Fund v. Teamers Local Union No. 229

Welfare Fund*, 764 F.2d 147, 153–54 & n.6 (3d Cir. 1988)).)  On this point, however, there is no

longer any ambiguity. After this motion was briefed, the Third Circuit formally adopted the

prevailing view that "health care providers may obtain standing to sue by assignment from a plan

participant." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014); *see

also Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 302 (3d Cir. 2007) ("ERISA's legislative

history indicates that its standing requirements should be construed broadly to allow employees

to enforce their rights.").[2]  Accordingly, as a health care provider Spine Surgery may bring suit

for ERISA benefits upon valid assignment from a plan participant or beneficiary.

      INDECS argues, however, that Spine Surgery lacks "standing" to pursue its claims for

ERISA benefits.  This position rests on a purported failure of the assignment to transfer "a right

to initiate legal action against the insurer."  (INDECS Moving Br. 15–18.)  The Third Circuit's

very recent holding in *Nat'l Health Plan Corp. v. Teamsters Local 469*, 2014 WL 4589917 (3d

Cir. Sept. 16, 2014), bears on the standing issue INDECS raises. Drawing on the Supreme

---

[2] It follows that, on this point, the older, *ILGWU*-derived district court cases relied upon by INDECS—such as *Health Scan, Ltd. v. Travelers Insurance Co.*, 725 F. Supp. 268, 269 (E.D. Pa. 1989)—are no longer good law.

Court's instruction in *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014), the court found that a party's entitlement to bring suit under ERISA should not be viewed as a question of statutory standing.  *Id.* at *2.  Rather, the court must consider the issue under a "straightforward cause-of-action analysis" to "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."  *Id.* (quoting *Lexmark,* 134 S. Ct. at 1387).  This court therefore will follow the Third Circuit's guidance in considering whether the Assignment obtained from Anthony P. is sufficient to place Spine Surgery "within the class of plaintiffs whom Congress has authorized to sue."  *Id.* at *2 (quoting *Lexmark,* 134 S. Ct. at 1387).

    3) *The Sufficiency of the Assignment of Benefits*

    The Assignment is titled "Patient Registration: Office Policy/Assignment of Insurance Benefits – Authorization to Release Information" and "authorize[s] payment directly to Spine Surgery . . . or other provider of health services of any and all insurance benefits to which [Anthony P.] may otherwise be entitled for services rendered by the provider."  (Assignment.) INDECS characterizes the "purported assignment" as "no assignment at all," because it "neither authorizes Spine Surgery to collect from the insurer, nor permits Spine Surgery to initiate legal action to collect money from the insurer."  Instead, according to INDECS, the Assignment authorizes the *payer*—either INDECS or Constant—to make payments directly to Spine Surgery, rather than authorizing Spine Surgery to collect payment, while remaining silent on the ability to sue for benefits.  (INDECS Moving Br. 15–18.)

    INDECS relies on *Middlesex Surgery Center v. Horizon, ABC Benefit Plans 1–10*, No. 13-112, 2013 WL 775536 (D.N.J. Feb. 28, 2013) (Chesler, J.).[3]  In the same way Spine Surgery

---

[3] As INDECS observes, Spine Surgery's attorney also represented Middlesex Surgery Center in that lawsuit.

argues here, Middlesex Surgery Center ("MSC") alleged that it received a valid assignment from

its patient Laura M., and was therefore entitled to pursue claims for ERISA benefits derivatively.

The assignment in *Middlesex* read:

> I, Laura M., by marking and signing below, agree to representation by [MSC] in
> an appeal of an adverse UM determination as allowed by N.J.S.A. 26:2S–11, and
> release of personal health information to [the New Jersey Department of Banking
> and Insurance], its Contractors for the Independent Health Care Appeals Program,
> and independent contractors reviewing this appeal. My consent to representation
> and authorization of release of information expires in 24 months, but I may
> revoke it sooner.

*Middlesex*, 2013 WL 775536, at *3 (alterations in original).  But the district court was not

persuaded that such language constituted a valid assignment under New Jersey law.  Instead it

found that "the language reads as a grant of a power of attorney for the limited purposes of

allowing MSC to *represent* the patient-insured in appealing the Fund's decision through the

Department of Banking and Insurance's [] Independent Health Care Appeals Program."  *Id.* at *4

(emphasis in original).  Relying on *Middlesex*, INDECS argues that under the Assignment at

issue here,"[t]his authorization fails to provide any assignment of a right to initiate legal action

against the insurer." (INDECS Moving Br. 18.)

 Spine Surgery, by contrast, relies on a decision of a different judge in this district

addressing the sufficiency of an assignment of benefits.   The plaintiff-provider in *Premier*

*Health Center, P.C. v. UnitedHealth Group* [*Premier I*], No. 11-0425, 2012 WL 1135608

(D.N.J. Apr. 4, 2012) (Salas, J.) argued that it was entitled to pursue claims for ERISA benefits

as assignee of a plan participant under an assignment that read, in part, "THIS IS A DIRECT

ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY," *id.* at *6

(formatting as in original).  The court found this language sufficient to confer standing by

assignment, and noted that it would be "illogical to recognize that [a] valid assignee has a right to

receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right." *Id.* at *8.

As evident from these different outcomes, courts in this District have disagreed on the kind of assignment language necessary to permit provider claims for ERISA benefits. Some have found the "typical authorization by which the patient permits the insurer to pay the provider directly [to be] insufficient," requiring instead that "the patient . . . relinquish and assign all plan rights and benefits, including the right to sue." *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 523 (D.N.J. 2013) (McNulty, J.) (citing *MHA, LLC v. Aetna Health, Inc.*, No. 12-2984, 2013 WL 705612, at *5–8 (D.N.J. Feb. 25, 2013) (Chesler, J.)). Others find the right to payment to imply an assignment to receive and sue for plan benefits. *Id.* at 523–24 (citing, *inter alia*, *Wayne Surgical Ctr. v. Concentra Preferred Sys.*, No. 06-928, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007) (Ackerman, J.) ("It is illogical to recognize that [provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right.")). The same division exists outside of this District and Circuit. *See Productive MD, LLC v. Aetna Health & Aetna Life Ins Co.*, 969 F. Supp. 2d 901, 913–14 (M.D. Tenn. 2013) (collecting cases for the proposition that "federal courts have reached inconsistent conclusions about whether assigning the right to payment confers standing"); *see also Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, No. 12-7243, 2014 WL 1301943, at *8 (E.D. Pa. Mar. 27, 2014) (holding that right to payment did not assign ERISA benefits), *appeal pending*, C.A. No. 14-1832.[4]

INDECS's interpretation of the Assignment's language glosses over that it, INDECS, is not a party to the Assignment and is not in a prime position to instruct either Spine Surgery or

---

[4] The issue of right-to-payment/assignment standing has been squarely raised in the appeal now pending before the Third Circuit. *See* Appellant's Br., 2014 WL 2812353, at *10–13.

Anthony P. about the intended outcome of the agreement between them.  The intent of the

contracting parties cannot be lightly disregarded, either in contract law generally or ERISA in

particular.  *See* Am. Jur. 2d Assignments § 84 ("Use of the word 'assign' or 'assignment' is not

essential to effect a valid assignment, so the parties' failure to use the word 'assignment' is not

fatal to the conclusion that they *intended an assignment*." (emphasis added)); *cf. Taylor v.*

*Continental Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232–34 (3d Cir.

1991) (discussing, in ERISA plan context, the necessity of determining the intent of both

contracting parties).  The Assignment is labeled "Assignment of Insurance Benefits" and

designates direct payment to Spine Surgery of "any and all insurance benefits." That the

Assignment contained language about Anthony P.'s liability for the uncovered amount does not

undermine this arrangement.  *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628

F.3d 725, 727–29 (5th Cir. 2010) (addressing valid assignments containing similar disclaimer

language); *cf. Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 13-3057, 2013 WL

5780815, at *7 n.3 (D.N.J. Oct. 25, 2013) (Linares, J.) ("[T]his Court is unaware of any other

authority supporting the proposition that a provider's preservation of the right to sue a plan

participant or beneficiary for any amount that an insurer fails to pay defeats a provider's standing

to sue under ERISA.").

INDECS has not persuasively shown the Court why construing ambiguity against

assignment is the better approach, particularly where assignment of rights is "typical of many

healthcare transactions," *Quality Infusion Care,* 628 F.3d at 726.  In its decision definitively

ruling that healthcare providers may obtain standing to sue by assignment from plan subscribers,

the Third Circuit gave practical reasons why:

> Many providers seek assignments of benefits to avoid billing the beneficiary
> directly and upsetting his finances and to reduce the risk of non-payment.  If their

> status as assignees does not entitle them to federal standing against the plan,
> providers would either have to rely on the beneficiary to maintain an ERISA suit,
> or they would have to sue the beneficiary.  Either alternative, indirect and
> uncertain as they are, would discourage providers from becoming assignees and
> possibly from helping beneficiaries who were unable to pay them "upfront." The
> providers are better situated and financed to pursue an action for benefits owed
> for their services.

*CardioNet*, 751 F.3d at 179 (quoting *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d

1286, 1289 n.13 (5th Cir. 1988)).

Given the reasoning in *CardioNet*, this Court is satisfied that the Assignment in question

effectively transferred to Spine Surgery the right to pursue this action for benefits owed for its

services.  Following the Third Circuit's guidance in *Nat'l Health Plan Corp. v. Teamsters Local*

*46,* the Court holds that, by reason of the Assignment, Spine Surgery falls within the class of

plaintiffs whom Congress authorized to sue for ERISA benefits.  The motion to dismiss will

therefore be denied to the extent that it challenges Spine Surgery's "standing" to bring a claim

for ERISA benefits.

C) Fiduciary Status: INDECS as a Proper Defendant in a Claim for Benefits

INDECS contends that Spine Surgery cannot maintain a claim for benefits against it

because, as claims administrator, INDECS is not a Plan fiduciary.  In support, INDECS points to

the lengthy list of responsibilities granted by the Plan to Constant, and to the Plan's explicit

statement that INDECS is "not a fiduciary" (and Constant is "the" fiduciary).  (INDECS Moving

Br. 8–13.)

To the extent that an ERISA claim for benefits can only be brought against the plan or a

fiduciary, *see Curcio v. John Hancock Mutual Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994),[5]

INDECS's reliance on Plan language designating Constant to be "the" fiduciary is misplaced.  In

---

[5] The Court notes that the claims in *Curcio* were for equitable estoppel and breach of fiduciary duty, pursuant to 29
U.S.C. §§ 1109 & 1132(a)(3)(B), and not for benefits under § 1132(a)(1)(B).  *See Curcio*, 33 F.3d at 235 & n.15.

12

addition to persons expressly named by a given plan, *see* 29 U.S.C. § 1102(a), fiduciaries under ERISA include people who "exercise[] *any* discretionary authority or discretionary control respecting management of such plan or exercise[] *any* authority or control respecting management or disposition of its assets" or "ha[ve] *any* discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A) (emphasis supplied). This definition is quite broad, is not "all or nothing," and must attach to the "particular activity in question."  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003).  As a result, a party can be a functional fiduciary despite plan or contract language purporting to limit that status. *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012).

Here, while the Plan assigns Constant maximal discretionary authority, INDECS, as claims administrator, has not demonstrated that the Plan gives it "purely ministerial tasks," *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 39 (3d Cir. 1991), so as to preclude fiduciary status. While INDECS relies on the Plan language limiting its authority, other provisions reveal that INDECS performed more than ministerial tasks and is afforded some degree of discretion. INDECS was responsible for "[a]djudicat[ing] properly documented claims in accordance with Plan provisions"; "[u]tiliz[ing] Compliance Department to audit all issues regarding . . . otherwise questionable claims and [performing] periodic audits"; "[c]ommunicat[ing] . . . with physicians, hospitals, and other persons or institutions . . . in order to clarify or verify claims"; and "[r]espond[ing] to claim inquiries from Plan participants and suppliers of health care services."  Taken on its face, and without the benefit of discovery,[6] the Plan language reasonably indicates that INDECS played more than a ministerial role in this process.  *See Smith v. Medical*

---

[6] INDECS relies on *Curcio* for the proposition that the Plan language demonstrates it is not the proper defendant in this action.  That decision—and many of the cases cited above, including *Smith* and *Lifecare*—was considered on appeal from summary judgment ruling.  This lends further support to the idea that INDECS's actual responsibility under the contracts is a fact-bound issue, better resolved at a later stage of the proceedings.

*Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011) ("As a claims administrator with the power to grant or deny a participant's claim for health insurance benefits, Auxiant is an ERISA fiduciary."); *see also LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs*, 703 F.3d 835, 846 n.10 (5th Cir. 2013) (finding third-party claims administrator to be liable under § 1132(a)(1)(B) because of its exercise of discretion, despite contracts characterizing its role as ministerial). The Court therefore declines to dismiss Spine Surgery's claims against INDECS for ERISA benefits.

D) Document Claim: INDECS as a Proper Defendant

In count 3 of the amended complaint, Spine Surgery invokes 29 U.S.C. § 1132(c)(1), which allows a court to fine—up to $110/day, *see* 29 C.F.R. § 2575.502c-1—and/or impose "other relief" upon "[a]ny administrator" who fails to comply with certain requests for information by a participant or beneficiary. Spine Surgery states that it requested copies of the Plan and "documents supporting Defendants' calculation of reimbursement," but did not timely receive them. (Am. Compl. ¶¶ 30–33.) Spine Surgery does not indicate which defendant it actually requested the relevant information from.

INDECS argues that the obligation to "provide all necessary documentation" is "indisputably not [its] responsibility." (INDECS Moving Br. 20.) It points out that both the Plan and Agreement clearly assign all document responsibilities to the Plan's administrator, Constant. (*See* INDECS Moving Br. 20–21 (citing Plan 51–52, Agreement 1).)

In order to state a claim under § 1132(c)(1), a plaintiff must allege that 1) it made a request to a plan administrator, 2) who was required to provide the requested material, but 3) failed to do so within 30 days of the request. *Narducci v. Aegon USA, Inc.*, No. 10-955, 2010 WL 5325643, at *3 (D.N.J. Dec. 15, 2010) (Cavanaugh, J.). As these elements and the statutory

14

language itself make plain, liability attaches only to the specifically designated plan administrator.  Under 29 U.S.C. § 1002(16)(A), "administrator" is defined to mean:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;

> (ii) if an administrator is not so designated, the plan sponsor; or

> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

The Plan document is clear.  Constant is the Plan administrator and sponsor.  (*See, e.g.*, Plan 50.)  As such Constant is the "administrator" under the ERISA statutory definition.  There is nothing pleaded in the complaint or contained in the record suggesting to the contrary, and courts have consistently held that the statute means what it says: the Plan administrator is the only liable entity on this count.  *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009) ("[L]iability under section 1132(c)(1) is confined to the plan administrator and [courts] have rejected the contention that other parties, including claims administrators, can be held liable for the failure to supply participants with the plan documents they seek."); *Cohen*, 2013 WL 5780815, at *9 ("As Horizon is not the administrator, it cannot be held liable under 29 U.S.C. § 1132(c)(1)(B).").

Count 3 will therefore be dismissed as to INDECS.

## E) Maintenance of Claims Procedures

Count 4 of the amended complaint alleges a violation of the claims procedures of 29 C.F.R. § 2560.503-1.  INDECS argues that count 4 must be dismissed because the Plan language assigns "any duty pertaining to the establishment of claims and appeal procedures" to Constant,

as Plan administrator, not INDECS.  In the absence of discovery concerning the roles actually played by INDECS and Constant in that regard, the Court declines to dismiss count 4 for the same reasons as those outlined in Section II(C) *supra*.

## III. Conclusion

For the reasons discussed above, the Court will grant INDECS's motion in part and deny it in part. Count 1 of the amended complaint is dismissed in its entirety, and count 3 is dismissed as to INDECS.  An appropriate order will be entered.


/s/ Katharine S. Hayden
Date: September 30, 2014                         Katharine S. Hayden, U.S.D.J.

16